```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
TRADEWIND DISTRIBUTION, LLC,                                :
                                                            :
                              Plaintiff,                    :    MEMORANDUM
                                                            :    DECISION AND ORDER
              -against-                                     :
                                                            :    10 Civ. 5716 (BMC)
UNILUX AG,                                                  :
                                                            :
                              Defendant.                    :
                                                            :
----------------------------------------------------------- X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 20 2011 ★
BROOKLYN OFFICE

**COGAN**, District Judge.

In this diversity case, plaintiff alleges that defendant breached their distribution contract pursuant to which plaintiff was granted an exclusive territory within the United States. The defendant, a German company, seeks to dismiss in reliance on forum selection clauses contained in the contracting documents which provide for litigation in Germany. For the reasons set forth below, the motion is granted.

## BACKGROUND

On a motion to dismiss based on a forum selection clause, facts should be considered in the light most favorable to the plaintiff. See Phillips v. Audio Active Ltd, 494 F.3d 378, 384 (2d Cir. 2007). With this in mind, the Court assumes for the purpose of this motion that the following facts are true.

TradeWind is a distributor of windows and doors with its principal place of business in Huntington Station, New York. Unilux is a German manufacturer of custom-made windows and doors. In March, 2007, TradeWind and Unilux signed a contract by which TradeWind was granted the exclusive right to sell Unilux products within a specific geographical area (the

"Contract Area"). The parties refer to this contract as the "Distributor's Contract." TradeWind's complaint alleges that Unilux breached the Distributor's Contract by permitting other distributors to sell Unilux products within the Contract Area, causing TradeWind to suffer damages exceeding six million dollars. TradeWind further alleges that it incurred costs while repairing certain Unilux products, at Unilux's behest, that the Distributor's Contract did not obligate TradeWind to incur. TradeWind therefore brings a claim of unjust enrichment to recover "an amount no less than $4,829.41," which Unilux still owes in connection with these repairs.

Annexed to the Distributor's Contract is a set of terms and conditions defined in the Distributor's Contract as the "AGB." The Distributor's Contract references the AGB in four different places. Section 1(2), on the first page of the Distributor's Contract, introduces the AGB by stating: "[TradeWind] sells exclusively according to the current business regulations of the manufacturer (AGB). Along with this contract there are valid business regulations (General Terms) from the manufacturer (see appendix AGB)." Section 7(2) of the Distributor's Contract states: "The current valid version of [Unilux]'s general terms and conditions of business, which are also applicable in commerce between other customers and [Unilux], are also valid for any business conducted between [Unilux] and [TradeWind]. The current valid version of [Unilux]'s general terms and conditions of business (AGB) are enclosed with this contract." A notation appears, at the bottom of the last page of the Distributor's Contract, as follows:

**Attachments**
AGB (General Terms)

The Distributor's Contract and the AGB each contain a forum selection clause. They are not identical. The Distributor's Contract's forum selection clause can be found in § 11(3):

> Jurisdiction for any disputes in relation to this agreement or in business executed by it is the manufacturer's place of business in Salmtal/Germany. Each contract partner also has the right to sue the other at their general jurisdiction.

The AGB's forum selection clause can be found in § 9 of that document:

> Place of jurisdiction for all contractual legal disputes, including both cheque and bill of exchange disputes, is Trier. Legal proceedings can, however, be initiated by both parties at the place of performance. The seller is able to initiate legal proceedings at the business location of the buyer.

The AGB also contains a choice-of-law provision specifying that "German Law applies exclusively." The Distributor's Contract does not contain a choice-of-law provision.

Unilux argues that the AGB and the Distributor's Contract are one agreement and that, therefore, the AGB's choice-of-law provision requires me to interpret both forum selection clauses under German law. Unilux further argues that dismissal of the complaint is proper because the forum selection clauses in the Distributor's Contract and the AGB each mandate exclusive jurisdiction in Germany.

TradeWind argues that the AGB is separate and distinct from the Distributor's Contract, and that German law therefore does not govern my interpretation of the forum selection clause contained in the Distributor's Contract. Because the instant dispute arises from provisions of the Distributor's Contract, rather than the AGB, TradeWind argues that the only forum selection clause applicable to this dispute is the one contained in the Distributor's Contract. Interpreted under federal or state law, TradeWind reads this clause to permit, but not mandate, jurisdiction over this dispute in Germany.

## DISCUSSION

The prevailing Second Circuit framework regarding the enforceability of forum selection clauses is a burden-shifting analysis in which the party seeking enforcement must first demonstrate that the forum selection clause validly mandates foreign jurisdiction. See <u>Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.</u>, 572 F.3d 86, 89 (2d Cir.

2009) (citing Phillips v. Audio Active, Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007)). To meet this initial burden under federal law, the Second Circuit requires a party to show that (1) the clause was reasonably communicated to the opposing party; (2) the clause provides for mandatory, rather than permissive, jurisdiction; and (3) the plaintiff's claims are subject to the forum selection clause. If this is demonstrated, there is a presumption of enforceability that the party opposing enforcement can rebut only upon a "sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Id. at 383-84 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907 (1972)).[1]

A.  **Applicable Law**

1. **The AGB's Choice-of-Law Provision Applies to the Distributor's Contract**

The validity and scope of a choice-of-law provision is a threshold question that a federal court, sitting in diversity, should decide based on the forum state's law rather than the law specified in the clause. See, e.g., Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 332-33 (2d Cir. 2005). Under New York law, multiple writings "may be read as one contract only if the parties so intended," and that intent can be gleaned from the "circumstances surrounding the transaction." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 237 (2d Cir. 2006) (citing Rudman v. Cowles Commc'ns, Inc., 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33 (1972)). In determining whether TradeWind and Unilux intended to read the Distributor's Contract and the AGB together, this Court should consider whether the two writings "form a part of a single

---

[1] The enforcement of a forum selection clause through dismissal under Rule 12(b) is a "well-established practice" within the Second Circuit. TradeComet.com LLC v. Google, Inc., 647 F.3d 472, 475 (2d Cir. 2011). Because the Supreme Court and the Second Circuit have declined to specify a particular procedural mechanism for bringing such a motion – indeed, the Second Circuit has expressly "'refused to pigeon-hole forum selection clause enforcement claims into a particular clause of Rule 12(b)'" – defendant's motion is proper and I need not specify that any particular sub-section of Rule 12(b) guides this analysis.

4

Case 1:10-cv-05716-BMC Document 37 Filed 09/20/11 Page 5 of 14 PageID #: 301

transaction and are designed to effectuate the same purpose." TVT Records v. Island Def Jam Music Grp., 412 F. 3d 82, 89 (2d Cir. 2005) (quoting This is Me, Inc. v. Taylor, 157 F.3d 139, 143 (2d Cir. 1998) (applying New York law)).

The parties manifestly intended the AGB to be part-and-parcel of the Distributor's Contract. The seven-page Distributor's Contract makes reference to the AGB four times, including a notation that the AGB is attached as an "appendix." Indeed, TradeWind's Amended Complaint attaches the Distributor's Contract and the AGB as one twelve-page exhibit, defined in the Amended Complaint simply as "the Distributor's Contract." Moreover, the Distributor's Contract expressly specifies that the AGB is "valid for any business conducted between [Unilux] and [TradeWind]," rather than exclusively applying to transactions between TradeWind and its customers. The term "any business" is broad, and undermines TradeWind's argument that the AGB should be incorporated into the Distributor's Contract only for very limited purposes.

As TradeWind notes, the AGB and the Distributor's Contract contain a few contradictory terms that are difficult to reconcile when the documents are read as one contract. For example, the Distributor's Contract provides for payment two days before any goods are loaded in Salmtal, whereas the AGB states that payment is always due upon delivery. Contradictions between terms tend to show that the parties did not intend for the two writings to be read as a single contract. However, New York law seeks to give effect to all of a contract's provisions to the greatest extent possible. The Second Circuit has interpreted New York law as requiring that "where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." Seabury Constr. Corp. v. Jeffrey Chain Corp., 289 F.3d 63, 69 (2d Cir. 2002) (quoting Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A., 760 F.2d 390, 395-96 (2d Cir. 1985)). This requirement applies not only when the

5

conflicting provisions are located in the same document, but also when one document incorporates the provisions of another. New York law therefore acknowledges that parties may intend to incorporate the terms of one document into another despite the existence of some inconsistencies.

Furthermore, the contradictions that exist between the AGB and the Distributor's Contract are overwhelmed by evidence that the parties nevertheless intended the documents to form one agreement. The numerous references to the AGB within the Distributor's Contract; the fact that the two documents were physically appended to each other; and the way the two documents dovetail to form a complete agreement governing TradeWind's distribution of Unilux products leads me to conclude that the parties intended to incorporate the AGB to the fullest extent possible. Because there is no term in the Distributor's Contract that contradicts the AGB's choice-of-law provision, German law governs the entire agreement.

The issue of the AGB's incorporation is intermingled with the question of enforceability of each forum selection clause – a question that, as discussed below, is governed by German contract law. It is therefore worth noting that German law leads me to the same conclusion. TradeWind and Unilux each submitted a declaration of a German attorney, who provided their respective interpretations of German law regarding the enforceability of forum selection clauses. Both attorneys agree that the AGB qualifies as "standard business terms" under § 305(1) of the German Civil Code ("Bürgerliches Gesetzbuch," hereinafter "BGB").

Unilux's expert informs this Court that, under German law, the determination of whether "standard business terms" are incorporated into a contract "is based upon common intention between the parties, which the parties can explicitly declare" in the contract. TradeWind does not dispute this interpretation of German law on this issue. I therefore agree with Unilux's

interpretation of German law on this point: the provision of the Distributor's Contract providing that the AGB is "valid for any business conducted between [Unilux] and [TradeWind]" demonstrates the parties' intention to incorporate the AGB into the Distributor's Contract. The AGB and the Distributor's Contract would therefore be interpreted as a single agreement even under German law.

### 2. German Law Governs the Enforceability of Both Forum Selection Clauses

When a choice-of-law provision covers a contractual dispute, "the law selected in that clause dictates how the contract's provisions should be interpreted." Fin. One, 414 F.3d at 332. However, when a contract includes both a choice-of-law provision and a forum selection clause, federal courts have disagreed over whether to interpret the meaning and scope of a forum selection clause under federal law or the law selected in the choice-of-law provision. See Phillips, 494 F.3d at 385 (collecting cases). The Second Circuit has not explicitly ruled on this issue, but has stated in dicta that the Court "cannot understand why the interpretation of a forum selection clause should be singled out for application of any law other than that chosen to govern the contract as a whole." Id. at 386.

District courts within the Second Circuit have read Phillips to indicate that "where a contract includes a choice of law clause, the chosen forum's law governs the interpretation of the forum selection clause." Evergreen Nat'l Indem. Co. v. Capstone Bldg. Corp., No. 3:7-1189, 2008 WL 349457, at *2 (D. Conn. Feb. 6, 2008); accord U.S. Bank Nat'l Ass'n v. Ables & Hall Builders, 582 F. Supp. 2d 605, 612 (S.D.N.Y. 2008). Several other circuits agree. See, e.g., Preferred Capital, Inc. v. Sarasota Kennel Club, Inc., 489 F.3d 303, 308 (6th Cir. 2009); Yavuz v. 61 MM, Ltd., 465 F.3d 418, 428 (10th Cir. 2006); Northwestern Nat'l Ins. Co. v. Donovan, 916 F.2d 372, 374 (7th Cir. 1990) (Posner, J.). Because I find these cases to be well-reasoned

and because the <u>Phillips</u> dicta is indicative of the Second Circuit's view on this matter, I find that German law should guide my interpretation of whether Unilux has met its initial burden of demonstrating that these forum selection clauses point toward mandatory jurisdiction in Germany.

**B.     Interpretation of the Forum Selection Clauses in the Distributor's Contract and the AGB**

### 1. Both Forum Selection Clauses Apply to this Dispute

Because the forum selection clauses in the AGB and the Distributor's Contract contain different language, TradeWind and Unilux disagree as to which, if either, forum selection clause applies. TradeWind argues that the clauses are contradictory, which renders them both "ineffective." In response, Unilux argues that the clauses do not contradict, and that, even if they did, the forum selection clause in the Distributor's Contract would take priority over the AGB.

Both parties agree that § 305 (c) of the BGB provides that contradictory terms in a single contract may result in the invalidity of both terms. According to TradeWind, the forum selection clauses are contradictory because the AGB's forum selection clause provides for jurisdiction in Trier, whereas the clause in the Distributor's Contract provides for jurisdiction in Salmtal. However, I am persuaded that these clauses both point toward jurisdiction in the Regional Court of Trier, Germany.

As both experts explain in their declarations, Germany's trial-level courts are divided between local (or "district") courts, which handle claims worth less than €5,000, and "regional" courts handling claims worth more than €5,000. A claim properly brought in the city of Trier would be directed either to the District Court of Trier or the Regional Court of Trier, depending on the amount in controversy. A claim properly brought in the city of Salmtal would be directed either to the District Court of Wittlich or the Regional Court of Trier, depending on the amount

in controversy. In other words: the cities of Salmtal and Trier are both within the jurisdiction of the Regional Court of Trier, and a claim worth more than €5,000 brought in either city would be directed to the Regional Court of Trier. Because TradeWind claims damages in excess of $6 million,[2] both forum selection clauses direct the parties to the Regional Court of Trier. The two forum selection clauses are therefore harmonious and neither would be invalidated under the BGB.

Although TradeWind did not address the argument in its brief, its expert argued, in his declaration, that both forum selection clauses are "ineffective" because they purport to send all types of claims to Salmtal and Trier. As the parties explain, these jurisdictions would not be appropriate for "legal dunning" (a term which the parties do not define, but which presumably consists of debt collection actions) or "fair competition" proceedings, as German law provides a mandatory jurisdiction for these proceedings and parties are not permitted to stipulate to a different location. The parties agree that § 40 of Germany's Code of Civil Procedure states that a forum selection clause is unenforceable if it purports to direct these particular claims to a forum other than that which is specified by German law. But TradeWind does not raise a "legal dunning" or a "fair competition" claim in this case, and TradeWind does not assert that a forum selection clause is unenforceable for claims that are appropriate in the specified jurisdiction simply because the clause would be unenforceable for other types of claims.

### 2. The Forum Selection Clauses Mandate German Jurisdiction for TradeWind's Breach-of-Contract Claims

In determining whether a forum selection clause provides for exclusive jurisdiction in Germany, the parties' experts agree that German law generally requires me to determine the parties' true "intentions." The parties' intentions may be "determined by means of the wording

---

[2] More than €4 million, under the current exchange rate.

9

and, if necessary, by interpretation in accordance with the circumstances and the interest of the parties." The parties also agree that German law provides for no presumption that the parties intended exclusive, rather than permissive, jurisdiction.

      Because TradeWind's contract claims arise from the terms of the Distributor's Contract, rather than the AGB, it is likely that the parties intended the forum selection clause contained in it to govern those claims. However, this forum selection clause is arguably ambiguous as to whether the parties intended it to mandate, rather than merely to permit, jurisdiction in Germany. The first sentence does not definitively limit the parties to Germany; it simply states that "jurisdiction for any disputes . . . is [Unilux]'s place of business in Salmtal/Germany." Because this sentence uses the term "any," it is possible that the parties simply meant to say that Germany would be an acceptable, but not mandatory, jurisdiction for any type of dispute. The second sentence, which states that "[e]ach contract partner also has the right to sue the other at their general jurisdiction," qualifies the first sentence and could reasonably be interpreted to say that the parties intended to permit American jurisdiction only if the suit were brought by Unilux. However, the word "their" in this second sentence is also ambiguous. If "their" means "the other party's," this sentence limits TradeWind to suing Unilux in Germany. But if "their" means "their own," this sentence would permit TradeWind to sue Unilux to New York.

      However, any ambiguity in this forum selection clause is resolved by reference to the AGB's forum selection clause. This clause states that jurisdiction for "all contractual legal disputes . . . is Trier." In 1972, the German Supreme Court held that a forum selection clause stating that a specific court has jurisdiction of "all disputes[] is ordinarily to be interpreted in such a way that in the case of claims against a party whose home court shall have jurisdiction,

10

the sole (exclusive) jurisdiction of this court has been agreed."[3] Although case law is not binding on Germany's lower courts to the same extent that it is on American courts, this precedent is a persuasive indication that German courts would interpret the AGB's forum selection clause as mandatory.

Even without reference to German case law, I find that the AGB's forum selection clause manifests the parties' intention to limit American jurisdiction to suits brought by Unilux. The third sentence of the clause, stating that "[Unilux] is able to initiate legal proceedings at the business location of [TradeWind]," is clearly meant to carve out an exception to the first sentence. If the first sentence was not meant to limit jurisdiction to Germany, this third sentence would be unnecessary.

Because I find that any ambiguities of the Distributor's Contract's forum selection clause are easily resolved by reference to the AGB, I conclude that the parties intended to bar TradeWind from suing Unilux anywhere other than Germany. It is therefore not necessary for me to resolve the contradictory German law provided by the parties regarding whether ambiguous terms should be construed in favor of Unilux or TradeWind. In addition, I am not persuaded by TradeWind's point that the Distributor's Contract uses the word "exclusively" in other parts of the contract, as this does not mean that the exact word "exclusively" was used every time the parties meant to create an exclusion.

### C. Enforceability of Forum Selection Clauses in the Distributor's Contract and the AGB

Having determined that Unilux has met its initial burden of demonstrating that the forum selection clauses mandate jurisdiction of TradeWind's breach-of-contract claims in Germany, the

---

[3] Another district court within the Second Circuit has applied this German precedent to find that a forum selection clause using the phrase "all disputes" designates mandatory jurisdiction. See Future Indus. of Am., Inc. v. Advanced UV Light GMBH, No. 3:9-966, 2010 U.S. Dist. LEXIS 90310, at *13-14 (D. Conn. Sept. 1, 2010).

11

burden shifts to TradeWind to rebut the presumption of enforceability. Because "the enforcement of forum clauses is an essentially procedural issue . . . while choice of law provisions generally implicate only the substantive law of the selected jurisdiction," this final analysis is governed by federal law. Phillips, 494 F.3d at 384 (internal citation omitted).

The Second Circuit gives "substantial deference" to valid forum selection clauses, particularly when the choice of forum was made "in an arms-length negotiation by experienced and sophisticated businessmen." New Moon Shipping Co. v. MAN B&W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997) (quoting Bremen, 407 U.S. at 12). A mandatory forum selection clause "should be enforced unless the enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." TradeComet.com, 647 F.3d at 475 (quoting Bremen, 407 U.S. at 10). The Second Circuit has explained that a party may demonstrate that a clause is unreasonable by showing that: "1.) its incorporation was the result of fraud or overreaching; 2.) the law to be applied in the selected forum is fundamentally unfair; 3.) enforcement contravenes a strong public policy of the forum state; or 4.) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." Phillips, 494 F.3d at 392 (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993)).

TradeWind does not assert, in its brief, that any of the foregoing circumstances are present. Indeed, TradeWind's brief does not even allege that jurisdiction in Germany would be unfair or inconvenient. Its expert's declaration is the only place where such an argument can be found. He states that "[t]he fact that the jurisdiction chosen by the AGB is nearby [Unilux]'s location while the other party must travel to another continent (and no international airport being nearby the city of Trier), indicates that it is an unreasonable disadvantage[.]" This argument is nearly identical to the argument rejected by the Second Circuit in Phillips. Like the plaintiff in

12

Phillips, TradeWind simply claims that jurisdiction in Germany would be "more costly or difficult, but not that it is impossible." Phillips, 494 F.3d at 393. TradeWind alleges no circumstances which would prevent it from bringing suit in Germany – indeed, TradeWind's complaint is full of references to TradeWind's substantial capacity for making investments and travelling internationally. Moreover, TradeWind has not asserted that the "disadvantage" posed by the forum selection clause exceeds "the obvious concomitants of litigation abroad," or was not foreseeable when it agreed to litigate in Germany. See id. TradeWind has therefore failed to rebut the presumption of enforceability of the forum selection clause.

### D. TradeWind's Unjust Enrichment Claim

In connection with TradeWind's unjust enrichment claim, which TradeWind claims is unrelated to the Distributor's Contract, the complaint demands damages in "an amount no less than $4,829.41." Federal jurisdiction in this case is predicated on 28 U.S.C. §1332(a), which provides that diverse parties may sue in federal court if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." Because TradeWind seeks more than $6 million in damages for its breach-of-contract claims, I have supplemental jurisdiction over TradeWind's related unjust enrichment claim under 28 U.S.C. § 1367(a).

Having dismissed the breach-of-contract claims, I have discretion to retain supplemental jurisdiction over TradeWind's unjust enrichment claim under 28 U.S.C. § 1367(c)(3). According to the Second Circuit, a district court may exercise this discretion in order to further "fairness" or "judicial efficiency," or to resolve any "novel or unsettled issues of state law." Mauro v. Southern New England Telecomms., Inc., 208 F.3d 384, 388 (2d Cir. 2000). However, when all claims that independently support federal jurisdiction have been dismissed, "the balance of factors . . . will [usually] point toward declining to exercise jurisdiction over the remaining state

13

law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S.Ct. 614 (1988). I see no reason why these parties should be litigating in two fora when all of their disputes can be resolved in one. Moreover, the breach of contract claim dwarfs the unjust enrichment claim. Because TradeWind has provided this Court with no particular justification to retain supplemental jurisdiction over its unjust enrichment claims, I decline to retain jurisdiction and the claim is dismissed without prejudice.

## CONCLUSION

Defendant's motion to dismiss is granted and the complaint is dismissed. The Clerk of the Court is directed to enter judgment accordingly.

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
       September 19, 2011